**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

MICHAEL J. SISSOM,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )          4:04 CV 72
                                      )
PURDUE UNIVERSITY                     )
                                      )
          Defendant.                  )

<u>**MEMORANDUM, OPINION, AND ORDER**</u>

This matter is before the Court on Defendant's ("Purdue University" or "Purdue"),

Motion for Summary Judgment (Docket No. 17) and Defendant's Rule 56 Motion to

Strike Materials Designated by Plaintiff in his Response to Purdue's Motion for Summary

Judgment ("Motion to Strike") (Docket No. 29).  The parties have fully briefed the issues.

For the reasons discussed below, the Defendant's Motion for Summary Judgment is

**GRANTED**.  The Defendant's Motion to Strike is also **GRANTED**.

**I.  Procedural History and Factual Background**

On September 24, 2001, Purdue University hired Michael J. Sissom ("Sissom" or

"Plaintiff") as a Customer Service Specialist in the Information Technology Department

("ITD") for its libraries.  Plaintiff's Deposition at 34:19 - 25:20.  His supervisors included

Carl Snow ("Snow"), William Corya ("Corya"), and Dean Emily Mobley ("Mobley").[1]

---

[1] Snow was Sissom's immediate supervisor, Corya was the ITD Department Head, and
Mobley was the then-Dean of Libraries.

*Id*. at 40:25 - 41:5, 45:18-21, and 46:18-23.  He was responsible for reviewing and implementing software for the ITD Call Center, managing the libraries' web sites utilized by the reference service team and answering internal customer service questions.  *Id*. at 38:16.

Sissom received his first performance review on March 21, 2002.  Complaint at 11.  He also began hormone replacement therapy on September 4, 2002. *Id.* at 12.   His second performance review occurred on March 18, 2003.  *Id*. at 13. Sissom suffered from non-work related stress in the summer of 2003 due to court proceeding a disorderly conduct arrest.  While he discussed these issues with Snow, he never indicated that this stress prevented him from being able to perform his job properly.  Plaintiff's Deposition at 48:11-23, 52:15-22, and 52:22-53:6.

At the end of July 2003, the ITD department adopted a new policy regarding Customer Service Announcements ("CSA").  Complaint at 15.  Then, on August 11, 2003, Sissom sent an email message to the entire ITD staff, including Snow, Corya, Mobley, and Thomas Haworth ("Haworth"), the Purdue Human Resources Services Administrator for the Department of Libraries.  Complaint, Attachment 1 at 4; Plaintiff's Deposition at Ex. B; Defendant's Memorandum in Support of Motion for Summary Judgment at 3.   In that email, Sissom notified the entire department that he was ill and would not be reporting to work; according to Sissom, this email placed the entire department on notice that he suffered from depression, anxiety, and "indirectly

acknowledg[ed] that [he] ha[d] other issues such as the hypogonadotropic

hypogonadism."  Plaintiff's Deposition at 63:24 - 64:12.  Sissom discussed

"unprofessional personal attacks" that he has suffered at work and threatened to file a

formal complaint if "necessary changes" did not occur.  Plaintiff's Deposition at Ex. B.

On August 12, 2003, Sissom and Snow met to discuss the August 11, 2003 email

and to discuss changes to customer service specialist positions.[2]  Complaint, Attachment 1

at 8; Plaintiff's Deposition at 66:1-12.  Sissom has not alleged that his job functions were

reduced based on his disability.  *Id.* at 68:12-15.

On September 2, 2003, Sissom was presented with a memorandum delineating

specific expectations in three areas: attendance, job performance, and constructive

relationships.  Complaint, Attachment 1 at 13-15 and Attachment 2 at 1-6; Plaintiff's

Deposition at Ex. C.  Sissom, Snow, Haworth, and Mobley met on September 8, 2003 to

discuss the memorandum, wherein Sissom addressed each issue and refused to sign the

document.[3]  Plaintiff's Deposition at 76:18-21.  Sissom also secretly tape recorded this

meeting.[4]  Complaint, Attachment 1 at 15; Plaintiff's Deposition at 76:23.  Sissom was

subsequently terminated on September 11, 2003.  In his termination letter, Purdue stated

---

[2]Sissom was a Customer Service Specialist in the Information Technology Department ("ITD").
Plaintiff's Deposition at 34:19 - 25:20.

[3]Sissom acknowledged that he was able to perform all of the job expectations.  Plaintiff's
Deposition at 76:7-12.

[4]In his Complaint, Sissom stated, "This meeting was tape recorded by myself."
Complaint, Attachment 1 at 15.

3

that Sissom was terminated because of (1) inadequate attendance; (2) failure to commit to the performance expectations memorandum; (3) tape recording the September 8 meeting and expressing his intent to continue taping conversations without others' knowledge; and (4) intimidating supervisors and co-workers with threats of filing harassment charges. Plaintiff's Deposition at Ex. D.

Plaintiff filed his complaint with Alysa Rollock ("Rollock") on February 5, 2004.[5] Plaintiff's Deposition Ex. G.  Since the Complaint was received more than 120 days following the incident of discrimination or harassment, Rollock dismissed the Complaint as not properly received.  Plaintiff's Deposition at Ex. H.  This dismissal was upheld by the Purdue's President.  Plaintiff's Deposition at 87:2-4.  On April 15, 2004, the EEOC dismissed Sissom's Complaint, and he received his EEOC Right to Sue letter on August 7, 2004.  Sissom filed his Complaint in this Court on October 6, 2004.

## II.  Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)*;  Bragg v. Navistar Int'l Trans. Corp*., 164 F.3d 373 (7th Cir. 1998).  After affording the parties adequate time for

---

[5]Rollock is the Vice President for Human Relations at Purdue.

4

discovery, a court must grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome-determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material, thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists. *Steen,* 2006 WL 335521 at *1 (7th Cir. Feb. 13, 2006); *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977). The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American*

*Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon

conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th

Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw

all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v.*

*Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).  However, the plaintiff must

do more than raise a "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S.

at 577; 106 S. Ct. at 1351.  Rather, he must come forward with "specific facts" showing

that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

Furthermore, the court is required to analyze summary judgment motions under the

standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55. In other

words, a party's evidence must be "competent evidence of a type otherwise admissible at

trial." *Steen,* 2006 WL 335521, at *2; *quoting Bombard*, 92 F.3d at 562.

### III.  Motion to Strike Analysis

Before the Court can rule on Defendant's Motion for Summary Judgment it must

address Defendant's Motion to Strike.  On August 9, 2005, the Defendant filed its Motion

to Strike, pursuant to N.D. Ind. L.R. 7.1 and 56.1(d).  Specifically, Purdue requested that

this Court strike Plaintiff's designation of materials in opposition to Purdue's Motion for

Summary Judgment in its entirety and to strike all references to those materials contained

within Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No.

26).  On September 30, 2005, Plaintiff filed his *pro se* Objection to Defendant's Rule 56.1

Motion to Strike.  In *McNeil v. United States*, 113 S.Ct. 1980, 1981 (1993), the Supreme

Court addressed the issue of *pro se* filings by prisoners.  There, the Court stated:

> Our rules of procedure are based on the assumption that litigation is
> normally conducted by lawyers.  While we have insisted that the pleadings
> prepared by prisoners who do not have access to counsel be liberally
> construed . . . and have held that some procedural rules must give way
> because of the unique circumstances of incarceration . . . we have never
> suggested that procedural rules in ordinary civil litigation should be
> interpreted so as to excuse mistakes by those who proceed without counsel.

*McNeil*, 113 S.Ct. t 1984.  (Internal citations omitted).  Pro se litigants are "held to less

exacting standards than those prepared by counsel and are to be liberally construed."

*Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *See also Haines v. Kerner*, 404

U.S. 519 (1972) (per curiam); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir.

2000).  However, the Court must be able to "discern cogent arguments."  *Anderson*, 241

F.3d at 544.  And, as the Supreme Court has noted, "'in the long run, experience teaches

that strict adherence to the procedural requirements specified by the legislature is the best

guarantee of evenhanded administration of the law.'" *Id.*; (*quoting Mohasco Corp. v.

Silver*, 100 S.Ct. 2486, 2497 (1980)).  *See also Members v. Paige*, 140 F.3d 699, 702 (7th

Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced.").[6]

### A.  Standard of Admissibility

When determining whether to grant a motion for summary judgment, the court

_____

[6]This Court proceeds in accord with the admonishments in *Loubser v. Thacker*, Slip Op.
No. 05-3058 (7th Cir. March 8, 2006).

may consider evidence beyond the pleadings, but may only consider evidence which would be otherwise admissible at trial. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2000); *See also Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir. 1995); *Oriental Health Spa v. City of Fort Wayne*, 864 F2d 486, 490 (7th Cir. 1988).  When evidence is offered through exhibits on a summary judgment motion, those exhibits "must be identified by affidavit or otherwise be admissible." *Powers v. Dole*, 782 F.2d 689, 696 (7th Cir. 1986). In *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, the Court stated, the "evidence need not be admissible in form (for example, affidavits are normally not admissible at trial), but it must be admissible in content."  301 F.3d 610, 613 (7th Cir. 2002); *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

Before evidence may be admitted, it must be authenticated.  Federal Rule of Evidence 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  In *United States v. Brown*, the 7th Circuit stated, "[a]uthentication relates only to whether the documents originate from [their alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records.  688 F.2d 1112, 1116 (7th Cir. 1982); *See Hood v. Dryvit Systems, Inc.*, No. 04-CV-3141, 2005 WL 3005612, *3 (7th Cir. Nov. 8, 2005).

To be admitted, the evidence must also be relevant.  Federal Rule of Evidence 401 states that relevant evidence is evidence which has "any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."  Here, the record is full of "facts"

which are not well-grounded in fact, but which are contradicted by or unrelated to the

depositions and documents file by the Defendant.  Additionally, the Plaintiff has filed

nearly 350 pages of "evidentiary materials." These evidentiary materials include copies

of a "Blank Customer Service Announcement" ("CSA"), various emails, Sissom's

termination letter, the "Progressive Discipline" document,[7] transcripts of two audio

recordings[8] made by the Plaintiff at his disciplinary meeting and termination meeting,

respectively, copies of Sissom's medical records, printouts of information from various

medical websites, excerpts from Sissom's EEOC filings, and applications for Medicaid

and Social Security benefits, to name a few.  Sissom has not properly authenticated or

"otherwise verified" the source and/or validity of this information.  *Rogers v. Ford Motor

Co.*, 952 F. Supp. 606, 611 (N.D. Ind. 1997).  He failed to properly designate any of the

evidentiary materials submitted as supporting a particular material fact.  These are

precisely the type of conclusory allegations that Rule 56 directs should be disregarded.[9]

---

[7]Plaintiff asserts that this Progressive Discipline document was downloaded from Purdue's website and that it details the policies and procedures Purdue follows for termination of employees. Plaintiff's Objection to Defendant's Rule 56.1 Motion at 2.

[8]These recordings will be addressed in more detail at a later point in this Order.

[9]In *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983), cert. denied, 465 U.S. 1006 (1984), the Supreme Court stated, "Rule 56 requires something more specific than the bald assertion of the general truth of a particular matter, rather it requries affidavits that cite specific and concrete facts establishing the existence of the truth of the matter asserted."

Local Rule 56.1(a) states, in pertinent part:

> In the text of the supporting brief or an appendix thereto, filed in support of a motion for summary judgment pursuant to Local Rule 7.1, there shall be a "Statement of Material Facts," supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence, as to which the moving party contends there is no genuine issue. Any party opposing the motion shall . . . serve and file any affidavits or other documentary material controverting the movant's position, together with a response that shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, _with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence_, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

(emphasis added).

Here, Sissom simply provided this Court with a plethora of information for the Court to sort through, without a single citation to affidavits, depositions or other admissible evidence. The emails and self-transcribed transcriptions of the taped conversations from his disciplinary and termination meetings are incomplete, unreliable, and ridden with hearsay statements.[10]  In *Zukadinovich v. Zentz*, 995 F.2d 750, 752 (7th Cir. 1993), the Court held that when "the recording contains inaudible or unintelligible portions, the decision whether to admit it in evidence is committed to the sound discretion of the trial court." *Id*. at 753; (*citing United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir. 1988)).  This Court is unwilling to deem these transcripts as complete, accurate and reliable evidence.  Additionally, the transcripts are not the "best evidence" of the recorded conversation; in this instance, the recordings themselves are

---

[10]None of the hearsay exceptions apply in this case.

the best evidence.[11]  Finally, the Plaintiff has failed to provide the proper foundation to

show that the original recording is accurate, trustworthy, and what he claims it to be.

Defendant's Memorandum in Support of Motion to Strike at 5.  Thus, he has failed to

authenticate it.  Sissom has failed to prove by clear and convincing evidence that it is a

true, accurate, and authentic recording of the asserted conversation by the claimed

parties.  See *United States v. Boyd*, 208 F.3d 638, 644 (7th Cir. 2000).  Authentication is a

condition precedent to admissibility.  As such, this Court declines to admit them as

evidence.

      The documents presented by Sissom are irrelevant and unauthenticated.  In his

Opposition to the Defendant's Motion to Strike, Plaintiff explains why, in his view, the

supporting materials are relevant.  He fails, however, to authenticate any of the

documents or properly demonstrate their relevance.[12]  Plaintiff offers explanations as to

why certain documents are not authenticated[13] but fails to actually authenticate them.

---

[11]This Court does not need to reach Plaintiff's argument that "Defendant's representative, Dean Mobley has waived all right to object to the recordings/transcripts by allowing the recording to take place because Plaintiff did not proffer the taped recordings, but rather the self-transcribed transcript of the recordings, which is not only unauthenticated but is also not the best evidence of the recorded conversations.  Plaintiff's Opposition Brief at 6.

[12]In explaining the relevance of including a copy of his termination letter, Plaintiff admits that including it was a mistake in collecting paperwork.  Not only does he fail to explain its relevance, he actually attempts to shift that burden to the Defendant.  Plaintiff stated, "if Defendant thinks it is irrelevant then Plaintiff asks, why did Defendant submit the document with their deposition of Plaintiff?" Plaintiff's Opposition Brief at 2.

[13] On page 2 of his Opposition Brief, Plaintiff asserts that since the emails included as attachments to his Opposition "were provided to Plaintiff by Defendant via the Defendant's process for obtaining public records . . . Defendant bares [*sic*] the burden of proving authenticity of all of these emails."  Then, on page 3, the Defendant stated, "defense counsil [*sic*] Trenten Klingerman, intentionally

11

Without proper authentication, these materials are inadmissible and must be stricken.

Additionally, because Sissom "failed to provide the Court with any sort of guide by which to navigate the maze of evidentiary submissions, or with which to connect the various pieces of evidence with the proposed 'material facts related to' . . . [Purdue's summary judgment motion], the proffered evidence is less than helpful." *Bradley v. Work*, 154 F.3d 704, 707 (7th Cir. 1998); *citing Waldridge*, 24 F.3d at 923 (the statements and designations required by local rules provide "roadmaps," without which the court should not have to proceed).[14]  It is not this Court's job to "figure out for which issues which parts" of the designated evidence might be admissible. *Bradley*, 154 F.3d at 708 (*citing Brasic v. Heinemann's, Inc*., 121 F.3d 281, 285 (7th Cir. 1997)).  The Court recognizes that the Plaintiff is pro se and should not be held to the same standards as a litigant with an attorney.  But, as noted above, "'strict adherence to the procedural requirements . . . is the best guarantee of evenhanded administration of the law.'" *McNeil*, 113 S.Ct. At 1984; (*quoting Mohasco*, 100 S.Ct. at 2497)).

Finally, Sissom himself acknowledges the inadequacy of the facts he is alleging.

---

or accidentally persuaded Plaintiff that he did not have to get Defendant to authenticate evidence unless ONLY the Defendant could authenticate it.  Plaintiff reread the rules of evidence and discovered that he could self authenticate the documents and proceeded to not burden the Defendant with unnecessary work. Plaintiff does not believe that any deception was taking place but a mistake based on defense council's [*sic*] statements was made."  These assertions are misplaced.  If there is more than one avenue by which materials can be authenticated, Plaintiff did not have to attain such authentication by Defendant. Nevertheless, the Plaintiff failed to properly authenticate the evidence at question here.

[14]This Court can require compliance with Local Rule 56.1.  *Waldridge*, 24 F.3d at 921-22.  *See also Kunik v. Racine County*, 106 F.3d 168, 174 (7th Cir. 1997); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

On page 3 of his Opposition Brief, Sissom states, "Plaintiff's evidence is improperly designated and he is prepared to accept the result of his action." He goes onto state that "his inability to properly designate the evidence was due to a lack of time, even having received two previous extensions of time, due to his disability interfering with his ability to keep up with the workload and his physical illnesses during that period." *Id*. Therefore, Defendant's motion to strike the evidence offered by Sissom in opposition to the Defendant's motion for summary judgment, in its entirety, is **GRANTED**. To the extent that those materials contain inadmissible hearsay, lay opinions, speculations, or conclusions, they–and all reference to them in Plaintiff's response to Defendant's Motion for Summary Judgment–are stricken.

### IV. Motion for Summary Judgment Analysis

The Defendant offers two main arguments in favor of summary judgment: (A) that the Plaintiff's claims are barred by the Eleventh Amendment and principles of sovereign immunity and (B) that, even if Plaintiff's claims are not barred by sovereign immunity, summary judgment is appropriate because Plaintiff's claims lack substantive merit. Each of these arguments will be addressed in turn.

### A. Eleventh Amendment and Principles of Sovereign Immunity

Plaintiff brought suit under Title I of the ADA, 42 U.S.C. § 12101, *et seq*. Specifically, he seeks damages and reinstatement from Purdue University under that Title.

The Americans with Disabilities Act ("ADA" or "Act") was passed in an effort

13

provide legislation to deal with the discrimination faced by over 43,000,000 Americans with mental or physical disabilities.  Its aim is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  §§ 12101(b)(1), (b)(4).  In *Board of Trustees of the Univ. of Alabama v. Garrett*, the Court stated that the ADA requires employers to "'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual[15] with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business.'" 531 U.S. at 361 (*quoting* § 12112(b)(5)(A)).  The burden of proof rests with the Plaintiff to demonstrate the he is a "qualified individual with a disability."  *See generally* Ann K. Wooster, J.D., *Actions Brought Under Americans with Disabilities Act*, 42 U.S.C.A. § 12191 et seq., 173 A.L.R. 629 (2001).

The ADA is divided into five subchapters:  Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V)."  *Brettler v. Purdue University*, 408 F.Supp.2d 640, 651 (7th Cir. 2006); *See* Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327, 327-28 (1990).  Title I of the ADA is at issue in this case.

---

[15]An individual is a qualified individual if they, "with or without reasonable modification to the rules, policies, or practices . . . mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2); *See Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

Title I of the ADA "prohibits certain employers, including the States, from 'discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Brettler*, 408 F.Supp.2d at 650-51 (*quoting* 42 U.S.C. § 12112(a)); *See also* 42 U.S.C. § 12111(2), (5), & (7).

The Eleventh Amendment bars private suits seeking money damages based on state violations of Title I of the ADA. *Lane*, 541 U.S. at 514. The Eleventh Amendment states, in pertinent part:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

This Amendment ultimately guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. 363; *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). This immunity may be abrogated by Congress when Congress "both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Garrett*, 531 U.S. at 363 (*quoting Kimel*, 528 U.S. at 73).

Most often, "state universities are held to be state agencies entitled to Eleventh Amendment immunity, primarily because of their financial reliance on the State." *Brettler*, 408 F.Supp.2d at 651; *See Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987)(finding that the "vast majority of cases considering the issue have found state

15

universities to be forfended by the Eleventh Amendment" and noting the inability of the parties and the Court to reveal a single circuit court opinion holding a state university not entitled to Eleventh Amendment immunity); *see also Davidson v. Board of Governors of State Colls. and Univs. For W. Ill. Univ.*, 920 F.2d 441, 442 (7th Cir. 1990).

In *Kashani*, the Court found that Purdue University was a state agency and an arm of the state entitled to Eleventh Amendment immunity.[16]  813 F.2d at 845-47.  The Court based its finding on Purdue's legal status and lack of financial autonomy.  Recently, in *Brettler*, the Court barred the plaintiff's claim under Title I of the ADA based on its finding that Purdue University is a state agency entitled to Eleventh Amendment immunity.  408 F.Supp.2d at 651.

This Court finds that Purdue University is the State of Indiana for purposes of the Eleventh Amendment, and the state has not consented to be sued in federal court.  *See Davidson,* 920 F.2d at 442, 442; *citing Ranyard v. Board of Regents*, 708 F.2d 1235, 1237-38 (7th Cir. 1983); *Ellis v. Board of Governors*, 102 Ill.2d 387 (1984). The source of Purdue's funding impacts whether it is considered an instrumentality of the state.[17]  The selection of Purdue's governing counsel, the Board of Trustees, also gives this Court insight into Purdue's level of autonomy from the State of Indiana.  The majority of

---

[16]Purdue's status as an instrumentality of the State of Indiana with sovereign immunity was confirmed in *Severson v. Bd. of Trustees of Purdue Univ.*, 777 N.E.2d 1181 (Ind. Ct. App. 2002) *trans. denied*, 777 N.E.2d 1181 (Ind. 2003).

[17]In *Kashan*i, the Court noted that for the 1982-83 academic year, nearly just over 36% of Purdue's funds came directly from the State of Indiana.  813 F.2d at 845.

Purdue's Board of Trustee members are selected by the Governor of Indiana. *Kashani*, 813 F.2d at 847. Specifically, the Governor has the right to select seven (7) of the ten (10) Trustees, while the Purdue Alumni Association selects the other three (3). However, the Governor officially <u>appoints</u> all ten. Indiana Statutes Ann. 20-12-37-2. Further, if judgment were entered in this case against Purdue University, it is clear from the record that the payment of the judgment would have a direct impact on the State of Indiana's treasury. *Kashani*, 813 F.2d at 846. Therefore, Purdue enjoys immunity from suits under Title I of the ADA as an instrumentality of the state, and this Court **GRANTS** summary judgment in favor of Purdue on that claim.

### B.  Substantive Claims

Even if Purdue is not entitled to summary judgment under Eleventh Amendment and principles of sovereign immunity, it is entitled to summary judgment on Plaintiff's claims that Purdue failed to reasonably accommodate his alleged disability and that Purdue retaliated against him in violation of the ADA. Plaintiff failed to dispute any of the material facts submitted by the Defendant in its memorandum in support of its motion for summary judgment. Plaintiff failed to rebut Defendant's designated evidence which established that Sissom did not engage in protected activity under the ADA, that he failed to meet Purdue's reasonable, non-discriminatory expectations at the time of his termination, and that he was terminated for legitimate and non-discriminatory reasons.

What remains, then, is Sissom's desired inference that Purdue must have known of

his depression, anxiety, and hypogonadotropic hypogonadism. This is unreasonable and is unsupported speculation. Such speculation "does not meet a party's burden of producing some defense to a summary judgment motion." *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 931-32 (7th Cir. 1995). Speculation alone "does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment. *Id.* (*See Posey v. Skyline Corp*., 702 F.2d at 106 ) ("The mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment."). Plaintiff's failure to come forth with <u>admissible</u> evidence "renders all other facts immaterial." *Celotex*, 477 U.S. at 317. Sissom bears the burden and sole responsibility for demonstrating the existence of a material issue of fact. He has not met that burden.

Sissom has made discrimination claims based upon his disability, as well as a retaliation claim based on his exercise of the statutory guarantees provided under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA"), for engaging in protected activities. While the court will attempt to address each claim individually, the nature of his discrimination and retaliation claims causes some overlap in discussion.

### *1.  Disability Discrimination*

Sissom claims that the Defendant discriminated against him, in violation of Title

VII and pursuant to Title I of the ADA by discharging him due to his depression, anxiety, and hypogonadotropic hypogonadism and by not offering him a reasonable accommodation.

In a non-movant's response to a motion for summary judgment, the nonmoving party need not "'respond to each and every fact, point by point, [but] . . . the nonmoving party [must] submit potentially determinative facts and identify factual disputes' that may preclude summary judgment."  *Brettler*, 408 F.Supp.2d at 646 (*quoting Fox v. Lear Corp.,* 327 F.Supp.2d 946, 948 (S.D. Ind. 2004).  On a motion for summary judgment, the Court assumes those facts submitted by the moving party if they are claimed and supported by admissible evidence; if the non-moving party fails to controvert that evidence with admissible supporting evidence, that failure may be detrimental to his case.  *Brettler*, 408 F.Supp.2d at 646; *citing* L.R. 56.1(b).[18]  As previously discussed in connection with the Defendant's Motion to Strike, there is no authenticated evidence upon which this court can base a determination.  As such, Sissom has failed to controvert the evidence and facts proffered by Purdue.

Even if the Court were to assume that Sissom was disabled, for purposes of the ADA, that he was qualified to perform the essential functions of his job, and that he had

--------

[18]Local Rule 56.1(b) states: "In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file."

adequately alleged discriminatory termination, the Defendant has met its burden of providing a legitimate, non-discriminatory reason for terminating Sissom. *Hedberg,* 47 F.3d at 931-32. Purdue argues that it terminated Sissom for poor performance. In *Oest v. Illinois Dep't. of Corrections*, the Court held, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an . . . employee did not like would form the basis of a discrimination suit.'" 240 F.3d 605, 613 (7th Cir. 2001) (*quoting Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Here, Sissom might have disliked Purdue's decision to terminate him and its supporting reasons, but this does not rise to the level of discrimination that is forbidden by the ADA. Moreover, Sissom has not demonstrated that Purdue's proffered reason for termination was pretextual for intentional discrimination.[19] Therefore, when viewing the facts in the light most favorable to the Plaintiff, there is no genuine issue of material fact regarding Defendant's motive for terminating Sissom.

### 2. Retaliation

Once it is determined that a *prima facie* case has not been made with regard to the basic claim of disability discrimination, it is harder, but not impossible, for a plaintiff to make a claim for retaliation. In *Stone v. City of Indianapolis Pub. Utils. Div*., 281 F.3d 640, 643-44 (7th Cir. 2002), the Seventh Circuit clearly delineated the two avenues in

---

[19]Plaintiff is required to prove, by a preponderance of evidence, that Defendant's proffered explanation is unworthy of credence. *Pugh*, 259 F3d. At 626, *citing Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

which a plaintiff can pursue a claim for retaliation.  The first method is by demonstrating

through direct evidence that: (1) the plaintiff has engaged in protected activity and (2) as

a result of that activity suffered the adverse employment action of which the plaintiff

complains.  *Stone*, 281 F.3d at 644.  If that evidence is not contradicted by the defendant,

then the plaintiff is entitled to summary judgment.  *Id*.  However, once the defendant

proffers evidence that contradicts that conclusion, a question of fact arises as to which

version is to be believed "unless the defendant presents unrebutted evidence that he

would have taken the adverse employment action against the plaintiff even if he had no

retaliatory motive."  *Id*.

The second method a plaintiff may utilize arises when there exists only indirect or

circumstantial evidence of retaliatory motive on the part of a defendant.  See *Hilt-Dyson*

*v. City of Chicago*, No. 01-20925, 2002 WL 272774, at *4 (7th Cir. Feb. 27, 2002); *See*

*also Stone,* 281 F.3d at 644.  In order to establish a prima facie case of retaliation under

the ADA, the plaintiff must demonstrate: (1) that he has engaged in statutorily protected

expression; (2) that he suffered an adverse action by his employer; (3) that despite

meeting the employer's legitimate expectations, the plaintiff suffered a materially adverse

employment action; and (4) that he was treated less favorably than similarly situated

employees who did not engage in statutorily protected activity.  *Id.;  See also Drake v.*

*Minnesota Mining and Manuf. Co.*, 134 F.3d 878, 885 (7th Cir. 1998); *McClendon v.*

*Indiana Sugars, Inc*., 108 F.3d 789, 796 (7th Cir. 1997).

Adverse employment actions have been broadly construed by this circuit, but the circuit is also clear that such adverse actions must be material.  In *Smart*, 89 F.3d at 441, the Court stated, "[n]ot everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Id. (quoting Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

The plaintiff must establish each element of the *prima facie* case in order to proceed.  After a sufficient showing, the employer then must offer a legitimate, noninvidious reason for the adverse employment action.  *Id*.  Once the employer proffers evidence of a legitimate reason for the plaintiff's termination, then "the burden shifts back to the plaintiff to demonstrate the pretextual nature of the proffered reason."  *Hilt-Dyson*, No. 01-2095, 2002 WL 272774 at *14.

Sissom contends that his August 11, 2003 email[20] was a request for

---

[20]Sissom's August 11, 2003 email was sent in response to criticisms received by Plaintiff regarding inappropriate emailing and CSA's.  Plaintiff's Deposition at 64:12-22 and 65:3-12.  Prior to this email, Purdue had informed Sissom that he was not meeting his specific job performance expectations.  His August 11th email was sent in response to Purdue's comments.  Purdue's "criticisms" of Sissom's work and the expectations set forth to be met by Sissom occurred before his August 11th email.  Logically, then, Purdue's setting of performance expectations could not have been in retaliation for the August 11th email.  Purdue set these expectations prior to Plaintiff's email and, when he failed to meet those expectations, he was terminated.

accommodation[21] and that his subsequent discipline and termination were acts of

retaliation by Purdue for such action.  Not only was this email not "protected activity,"

but Purdue has provided legitimate, non-discriminatory reasons for the actions it took in

first disciplining and later terminating Sissom.  See Plaintiff's Deposition at 63:24 -

64:12.  Specifically, Purdue lists four reasons for Sissom's termination: (1) his refusal to

adhere to the documented performance expectation; (2) his behavior in the September 11,

2003 meeting, "including his surreptitious recording of the meeting"; (3) his poor work

attendance, and (4) his threats to supervisors and co-workers.  Defendant's Memorandum

in Support at 5-6; Defendant's Reply Memo at 3; Plaintiff's Deposition at Exhibit D.

Simply stated, Plaintiff was unamenable to meeting Purdue's reasonable, legitimate

employment expectations and, as such, was unable to perform the requirements of the job.

Since Defendant has provided a non-discriminatory reason for Sissom's

termination, this Court may move directly to the issue of pretext.  *Abioye v. Sundstrand

Corp.*, 164 F.3d 364, 368 (7th Cir. 1998), *cert. denied* 119 S.Ct. 2337 (1999).  *See also,

E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149-50 (7th Cir. 1996).

An inference of pretext requires some showing that "(1) the defendant's explanation has

no basis in fact, or (2) the explanation was not the 'real reason,' or (3) . . . the reason

stated was insufficient to warrant the [termination]."  *Johnson v. City of Fort Wayne*, 91

F.3d 922, 931 (7th Cir. 1996) (citations omitted).  The pretext analysis seeks to uncover

---

[21]The "accommodation" requested was for Sissom's co-workers to "give up the petty
squabbling where [he] was concerned."  Plaintiff's Deposition at 95: 5-7.

23

the true intent of the defendant, not the belief of the plaintiff.  *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995), *reh'g denied*.

Sissom has failed to establish pretext in this case.  Pretext is established by proffering evidence suggesting that retaliation or discrimination was the most likely motive for the termination.  *Johnson v. Sullivan*, 945 F.2d 976, 908 n. 5 (7th Cir. 1991) (citations omitted).  An "employee's self-serving statements about [his] ability...are insufficient to contradict an employer's negative assessment of that ability."  *Adusumilli*, 164 F.3d at 353; *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992); *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997), *cert. denied* 118 S. Ct. 1795 (1998); *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1303 (7th Cir. 1991).  Self-serving statements do not "shed any light on whether the employer honestly based its employment decision on performance-related considerations."  *Dey*, 28 F.3d at 1460; *Gustovich*, 972 F.2d at 848.  Because Sissom has not presented any [authenticated, admissible] evidence to show that Defendant's reasons for terminating him were pretextual, summary judgment is proper.

## V.  Conclusion

Based on the foregoing, the Defendant's Motion for Summary Judgment (Docket No. 17) is **GRANTED**.  The Defendant's Motion to Strike (Docket No. 29) is **GRANTED**.

24

**IT IS SO ORDERED**.

**DATED: March  31 , 2006**


_____S/ ALLEN SHARP_____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**